FILED
COURT OF APPEALS
DIVISION II

2014 DEC 30 AM 9: 46

STATE OF WASHINGTON

BY_____

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44891-2-II |
| Respondent, | |
| v. | |
| ERIC CHRISTOPHER MARTIN, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, P.J. — Eric Martin appeals his convictions for one count each of first degree burglary, felony harassment, fourth degree assault, and third degree malicious mischief, and two counts of second degree assault. He argues that (1) his convictions violate the constitutional prohibition against double jeopardy,[1] (2) the trial court's limiting instruction constituted a comment on the evidence, (3) the prosecutor committed misconduct by accusing Martin of having claimed the victim was a liar, and (4) Martin's multiple convictions of second degree assault and harassment constituted the same criminal conduct. The State concedes that Martin's two second degree assault convictions violate double jeopardy. Accepting the State's concession, we vacate of one of Martin's second degree assault convictions, affirm his remaining convictions, and remand for resentencing.

---

[1] U.S. CONST. amend. V; WASH. CONST. art. I, § 9.

No. 44891-2-II

## FACTS

A.    *Assault*

Eric Martin dated Malory Wilson for years, and the couple saw each other off and on after their breakup in an attempt to reconcile. Martin had physically abused and made death threats to Wilson during their relationship. One night when the two were together at Wilson's house, Wilson woke up and discovered that Martin was in the bathroom, smoking what Wilson believed to be crack cocaine. She yelled at him to leave her house, at which point Martin flew into a rage.

Martin grabbed Wilson by the neck and repeatedly slammed her against the shower door, holding her off the ground with both of his hands. He dropped her, then "instantly" grabbed her by the neck again with one hand. 2 Verbatim Report of Proceedings (VRP) at 221. Eventually, Martin let go, and Wilson reached for her phone. Martin repeatedly blocked her from reaching the phone, either knocking it out of her hand or restraining her by pulling on her hair. Martin told Wilson, "I'm gonna kill you before I go to jail," and Wilson believed that Martin would kill her. 2 VRP at 224-25.

Martin left the house after hiding Wilson's cell phone, her Mace,® and her keys, and Wilson locked the door after him. Seconds later, Martin returned and broke down the door. He grabbed Wilson in the kitchen and threw her to the ground, pinning her down with his legs on her chest. He then took money out of Wilson's purse and left the house again. While making the 911 call, Wilson coughed repeatedly, apparently due to pains in her neck. She also bore red marks on her neck, scratch marks on her arm, and bruising on her arms and leg, photos of which were admitted into evidence.

2

Martin was charged in an amended information with one count each of first degree burglary, first degree robbery, felony harassment, fourth degree assault, third degree malicious mischief, and two counts of second degree assault. All crimes charged involved domestic violence sentencing aggravators.

B.    *Limiting Instruction*

At a preliminary hearing, the trial court ruled that the State could introduce evidence of past assault incidents between Martin and Wilson to help explain Wilson's state of mind. Martin presented a proposed limiting instruction, reading: "This evidence consists of prior allegations that may be considered by you for the purpose of understanding potential domestic violence." 1 VRP at 71. Martin noted that if the State intended to expand the instruction, he would withdraw his request for an instruction. The trial court agreed with the State that the instruction should be expanded, so Martin stated that he no longer wanted the instruction. The issue was tabled.

At the close of evidence, the parties again addressed the proposed limiting instruction regarding past violent incidents between Martin and Wilson. The trial court explained why it was prepared to use the State's proposed expanded version and Martin appeared to agree to it.[2]

The trial court discussed its concerns about potentially commenting on the evidence in giving this instruction:

> I'm having troubles with the language "explain why the victim had reason to fear"—it almost sounds like I'm telling them that's the right thing. And I'm not telling them that. That's something they can consider. I don't—it's—be—it

---

[2] Martin's attorney, in response to the trial court's discussion of the proposed expanded instruction, said: "I also agree with the—the court following the potential domestic violence to add victim's—for the purpose of the victim's state of mind—the reason to fear and the delay of reporting. I think the court indicated language that it would accept. Could we impose on your JA [(judicial assistant)] to prepare that . . . for us?" 2 VRP at 323-24.

almost becomes a comment on the evidence. . . . So I'm just thinking maybe "potential domestic violence comma state of mind and untimely reporting."

2 VRP at 325. Martin assented to this language.

The final instruction read:

Certain evidence has been admitted in this case for only a limited purpose. This evidence consists of prior allegations and may be considered by you only for the purpose of understanding potential domestic violence and the victim's state of mind. You may not consider it for any other purpose. Any discussion of the evidence during your deliberations must be consistent with this limitation.

CP at 78.

C.  *Closing Argument*

In his closing argument, Martin's attorney said: "We know what [Wilson] says. But we cannot rely upon [Wilson] at all times to give us the same answers—the correct answers and recall exactly what happened." 3 VRP at 380.

In rebuttal, the State said:

Defense attorney comes up here and attacks the victim because that's what he can do in this case. . . . And he says she's a liar—can't believe her because she didn't disclose to the cops that she was using cocaine the day before. That is ridiculous. It is ridiculous to think that she's a liar . . . .

3 VRP at 380, 382. Martin did not object to these statements. The State then rehabilitated Wilson's credibility by pointing out the fact that Wilson disclosed unflattering facts about herself at trial.

D.  *Sentencing*

A jury convicted Martin of first degree burglary, felony harassment, fourth degree assault, third degree malicious mischief, and two counts of second degree assault, but acquitted him of first degree robbery. The jury answered "no" to the special verdict form asking whether

No. 44891-2-II

Martin and Wilson were members of the same family or household, so the domestic violence sentencing aggravators did not apply.

Martin appeals.

## ANALYSIS

### I. DOUBLE JEOPARDY

Martin argues, and the State concedes, that his two second degree assault convictions, based on two events during one continuous attack, violate the prohibition against double jeopardy. We agree, and we direct the trial court to vacate one of Martin's second degree assault convictions.

Martin also argues that his fourth degree assault conviction violates double jeopardy principles. We disagree and affirm the fourth degree assault conviction.

Both the United States and Washington constitutions provide that a person may not be twice put in jeopardy for the same offense. U.S. CONST. amend. V; WASH. CONST. art. I, § 9. A claim of double jeopardy is a question of law reviewed de novo. *State v. Hughes*, 166 Wn.2d 675, 681, 212 P.3d 558 (2009). If a defendant's two convictions for the same offense violate double jeopardy, we vacate one conviction and remand for resentencing. *State v. Adel*, 136 Wn.2d 629, 631, 965 P.2d 1072 (1998). When a defendant is convicted of multiple counts of the same crime for the same conduct, we consider what unit of prosecution, or course of conduct, the legislature intended as the punishable act under the specific criminal statute. *State v. Sutherby*, 165 Wn.2d 870, 878, 204 P.3d 916 (2009). And when a defendant is convicted of second degree assault and fourth degree assault, our Supreme Court applies the unit of prosecution test. *State v.*

No. 44891-2-II

*Villanueva-Gonzalez*, 180 Wn.2d 975, 982, 329 P.3d 78 (2014). Thus, we look to determine whether Martin's three convictions arise from the same unit of prosecution.

Assault is a course of conduct crime, which "helps to avoid the risk of a defendant being 'convicted for every punch thrown in a fistfight.'" *Villanueva-Gonzalez*, 180 Wn.2d at 985. Thus, if multiple assaultive acts constitute only one course of conduct, then double jeopardy protects against multiple convictions. *Villanueva-Gonzalez*, 180 Wn.2d at 985.

A.    *Second Degree Assault Convictions Violate Double Jeopardy*

Martin was convicted of two counts of second degree assault by strangulation, one count based on strangling Wilson in the bathroom with both hands, and the other count based on immediately strangling her again with one hand. These acts constitute one course of conduct. Martin's two second degree assault convictions violate double jeopardy. Thus, we accept the State's concession that Martin's two convictions for second degree assault violate the prohibition against double jeopardy. We vacate one count of second degree assault.

B.    *Fourth Degree Assault Conviction*

Martin also argues that his fourth degree assault conviction violates the prohibition against double jeopardy because fourth degree assault is a lesser-included offense of second degree assault. We disagree.

When a defendant alleges that his convictions of second degree assault and fourth degree assault violate double jeopardy, we consider whether the assaults constituted the same course of conduct. *Villanueva-Gonzalez*, 180 Wn.2d at 985. This is a fact-specific inquiry, taking into account factors including: (1) the length of time over which the assaults took place, (2) whether the assaults occurred in the same location, (3) the defendant's intent or motivation for the

6

assaults, (4) whether any intervening acts or events interrupted the assaults, and (5) whether the defendant had an opportunity to reconsider his actions. 180 Wn.2d at 985.

Here, the two assaults do not constitute the same course of conduct. The assaults occurred in different locations: Martin assaulted Wilson in the bathroom, then later assaulted her in the kitchen. There were also intervening events between the two assaults. After Martin stopped strangling Wilson, he threatened her, stopped her from reaching her phone, hid some of her belongings, and left the house. Then, he forced his way back into the house and threw her down. These same facts demonstrate that Martin had the opportunity to reconsider his actions in between the assaults. Therefore, the second degree and fourth degree assaults do not constitute the same course of conduct and the convictions do not violate double jeopardy.

## II. LIMITING INSTRUCTION

Martin argues that the trial court's limiting instruction constituted a comment on the evidence. He argues that the term "domestic violence" was used without expert testimony or definition, leading the jury to speculate as to its meaning and making the pattern of domestic violence part of the evidence. Because Martin invited the claimed error, he is precluded from challenging it on review.[3]

The invited error doctrine precludes a party from creating an error at trial and then complaining of it on appeal, such as by requesting language in an instruction and contesting it on appeal. *In the Matter of the Pers. Restraint of Griffith*, 102 Wn.2d 100, 102, 683 P.2d 194 (1984); *City of Seattle v. Patu*, 147 Wn.2d 717, 721, 58 P.3d 273 (2002).

---

[3] By calling Martin's conduct "invited error" we do not mean to imply that the trial court did, in fact, err.

Here, Martin initially offered a limiting instruction in response to the State's plan to introduce evidence of domestic violence. Martin wanted an instruction modeled after WPIC 5.30 and proposed that the instruction address *"prior allegations that may be considered by you for the purpose of understanding potential domestic violence."* 1 VRP at 71.

Martin requested the very language he now complains about. Martin invited the claimed error and is now precluded from seeking review.

### III. PROSECUTORIAL MISCONDUCT

Martin argues that the prosecutor committed misconduct by accusing Martin of claiming Wilson was a liar. We hold that Martin failed to preserve this argument for review.

The Sixth and Fourteenth Amendments to the United States Constitution and article I, section 3 and article I, section 22 of the Washington Constitution guarantee the right to a fair trial. *State v. Finch*, 137 Wn.2d 792, 843, 975 P.2d 967 (1999) (plurality opinion). Prosecutorial misconduct may deprive a defendant of his constitutional right to a fair trial. *State v. Davenport*, 100 Wn.2d 757, 762, 675 P.2d 1213 (1984).

Where, as here, a defendant fails to object to misconduct at trial, he waives the issue unless he establishes that the misconduct was so flagrant and ill-intentioned that an instruction would not have cured the prejudice. *State v. Thorgerson*, 172 Wn.2d 438, 443, 258 P.3d 43 (2011). We focus less on whether the prosecutor's misconduct was flagrant and ill-intentioned and more on whether the resulting prejudice could have been cured. *State v. Emery*, 174 Wn.2d 741, 762, 278 P.3d 653 (2012). We consider the prosecutor's alleged improper conduct in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the jury instructions. *State v. Anderson*, 153 Wn. App. 417, 430, 220 P.3d 1273 (2009).

Here, Martin argues that the prosecutor accused him of calling the victim a liar: "And [defense counsel] says she's a liar—can't believe her because she didn't disclose to the cops that she was using cocaine the night before." 3 VRP at 382. The prosecuting attorney has wide latitude in closing argument to argue reasonable inferences from the evidence, including evidence respecting the credibility of witnesses. *Thorgerson*, 172 Wn.2d at 448; *see also State v. Stenson*, 132 Wn.2d 668, 727, 940 P.2d 1239 (1997). However, a prosecutor may not mischaracterize the defense's argument by falsely accusing it of claiming the State's witnesses were lying. *State v. Barrow*, 60 Wn. App. 869, 875-76, 809 P.2d 209 (1991).

Here, the prosecutor's statement constituted misconduct because she wrongfully accused Martin of calling Wilson a liar. However, although the prosecutor's statements accusing Martin of calling Wilson a liar were misconduct, they were not so flagrant and ill-intentioned that an instruction could not have cured any resulting prejudice.

Considering the entire record and facts of the case, there was not a substantial likelihood that the misconduct affected the verdict. *In re the Pers. Restraint Petition of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012) (plurality opinion). The defendant bears the burden of demonstrating that prejudice resulted, creating a substantial likelihood that the misconduct affected the verdict. *Thorgerson*, 172 Wn.2d at 442-43. Where the State's case turns almost exclusively on the credibility of the complaining witness, a prosecutor's improper remarks about that witness's credibility are more likely to affect the verdict. *State v. Boehning*, 127 Wn. App. 511, 523, 111 P.3d 899 (2005). By contrast, here, the State presented physical evidence corroborating Wilson's testimony, so Wilson's credibility was not the exclusive factor upon which the verdict turned. The evidence included Wilson's 911 call, during which Wilson

coughed repeatedly, supplementing her testimony at trial that her neck was hurting. The evidence also demonstrated that Wilson bore physical marks of the attack: photographs of her injuries, including red marks on her neck, scratch marks on her arm, and bruising on her arms and leg, were admitted and shown to the jury. Therefore, a rational jury could have found that Martin assaulted Wilson even if it questioned her credibility, so there was not a substantial likelihood here that the prosecutor's misconduct affected the verdict. Because Martin did not object to the misconduct and because he cannot establish that the misconduct was so flagrant and ill-intentioned that an instruction would not have cured the prejudice, he has failed to preserve this issue for review.

## IV. SAME CRIMINAL CONDUCT

Martin argues that his multiple convictions of second degree assault and harassment constitute the same criminal conduct for sentencing purposes. Because we remand for resentencing, we do not reach the merits of this challenge to Martin's sentence. Martin is entitled to a full resentencing on remand, at which time he may raise issues not raised at his initial sentencing. *State v. Tewee*, 176 Wn. App. 964, 971 n. 4, 309 P.3d 791 (2013), *review denied*, 179 Wn.2d 1016 (2014). At resentencing, "the parties shall have the opportunity to present and the court to consider all relevant evidence regarding criminal history, including criminal history not previously presented." RCW 9.94A.530(2).

We affirm all of Martin's convictions except for one count of second degree assault. We remand to the trial court to vacate one count of second degree assault and resentence Martin.

No. 44891-2-II

Martin should be allowed to argue whether his assault convictions constitute same criminal conduct at his resentencing.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, P.J.

We concur:

_____
Lee, J.

_____
Sutton, J.

11