IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 36504-2-III |
| | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DEMETRIUS R. ROBINSON, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — Demetrius Robinson appeals his convictions for

fourth degree assault and second degree assault. He contends that the fourth degree

assault conviction violates the prohibition against double jeopardy and that the trial court

violated his right to a unanimous jury verdict with respect to the second degree assault

conviction. The State concedes the double jeopardy issue. We affirm the second degree

assault conviction but remand for the trial court to vacate the fourth degree assault

conviction.

FACTS

On July 7, 2018, Mr. Robinson spent the afternoon with Bright Johnson, drinking

beer and spending time at two different apartment complex pools. Later in the evening,

the two joined several other friends and acquaintances and went to various private parties around Pullman. The group eventually returned to the indoor pool area located at the Campus Commons Apartments on the early morning of July 8.

Mr. Robinson had plans to meet up with his friend Madison Geidl. When Ms. Geidl arrived at the pool and saw Mr. Johnson, she retreated to her car and called Mr. Robinson, who came outside. Ms. Geidl informed him that the night before she had been at a party where Mr. Johnson groped her and that seeing him was giving her a panic attack. Ms. Geidl left and Mr. Robinson, who was visibly frustrated, returned to the pool area to find Mr. Johnson eating Mr. Robinson's food. Mr. Robinson angrily confronted Mr. Johnson about eating his food, and Mr. Johnson got into the hot tub.[1]

Mr. Robinson kicked a cell phone charger into the pool and asked Mr. Johnson to get in the pool and retrieve it. Mr. Johnson entered the pool, where he had difficulty retrieving the charger from the bottom of the pool. While standing on the side of the pool, Mr. Robinson hit and kicked Mr. Johnson one time. After retrieving the charger, Mr. Johnson handed it to Mr. Robinson and pulled himself out of the pool to sit on the edge with his feet still in the pool.

_____

[1] The parties disagree as to the exact sequence of events that occurred after Mr. Johnson entered the hot tub. During trial, the State played security camera footage from the Campus Commons Apartments that shows part of the incident. *See* Report of Proceedings at 116-43 (Ex. 16). This opinion describes the incident as depicted in the video footage.

While Mr. Johnson was sitting on the edge of the pool, Mr. Robinson took a swing at Mr. Johnson's face and then began punching and kicking him. Mr. Johnson attempted to escape across the pool deck into the hot tub, where Mr. Robinson caught him and attempted to hold Mr. Johnson's head under water. Mr. Johnson managed to writhe away and, at this point, two of the bystanders in the pool area ineffectually attempted to intervene before returning to their pool chairs to continue drinking and watching the incident unfold. Mr. Robinson continued to pace around the hot tub, attempting to hit and kick Mr. Johnson, who retreated to the middle of the hot tub. Mr. Robinson threw a chair at Mr. Johnson, then removed his belt and tried to whip Mr. Johnson with it. He then proceeded to throw several empty beer bottles at Mr. Johnson.

Mr. Robinson eventually emptied his pockets and jumped into the hot tub, at which point Mr. Johnson got out of the tub and tried to run away. He ran into a column, fell down, and Mr. Robinson proceeded to hit and kick Mr. Johnson while he was on the ground, aiming several kicks at his head. The bystanders finally intervened, and Mr. Johnson was able to escape. The entire episode, from the time Mr. Robinson initially hit and kicked Mr. Johnson to when Mr. Johnson escaped, lasted approximately eight minutes.

Mr. Johnson reported the incident to the Pullman Police Department, who was able to obtain the security camera footage of the incident from the Campus Commons

Apartments. They also interviewed Mr. Johnson, who reported injuries to his ribs, jaw, and eye socket.

The State originally charged Mr. Robinson with one count of second degree assault and alleged three alternative means: that he (i) intentionally assaulted Mr. Johnson and thereby recklessly inflicted substantial bodily harm, (ii) assaulted Mr. Johnson with a deadly weapon, and (iii) assaulted Mr. Johnson by suffocation. Prior to trial, the State amended the information to remove the substantial bodily harm alternative means and to add one count of fourth degree assault based on the punches and kicks that occurred during the incident.

The court instructed the jury on two alternative means of committing second degree assault: assault with a deadly weapon and assault by suffocation. The jury returned a verdict of guilty as to both counts. The jury also returned a special verdict form indicating it was not unanimous as to whether Mr. Robinson assaulted Mr. Johnson with a deadly weapon, but it was unanimous that Mr. Robinson assaulted Mr. Johnson by suffocation. The trial court sentenced Mr. Robinson to a standard range sentence of 15 months. Mr. Robinson filed a timely notice of appeal.

## ANALYSIS

On appeal, Mr. Robinson claims the conviction for fourth degree assault violates the prohibition on double jeopardy because it is based on the same acts underlying his

4

second degree assault conviction, and the State agrees.[2]  He also contends the court erred

by giving the alternate means instruction for the second degree assault count where there

was insufficient evidence that he assaulted Mr. Johnson with a deadly weapon.  We

address each argument in turn.

Washington's double jeopardy clause offers the same scope of protection as that

provided by the federal double jeopardy clause.  *In re Pers. Restraint of Percer*, 150

Wn.2d 41, 49, 75 P.3d 488 (2003).  Both prohibit "multiple punishments for the same

offense imposed in the same proceeding."  *Id.* at 49 (citing *State v. Bobic*, 140 Wn.2d

250, 260, 996 P.2d 610 (2000).  This court reviews double jeopardy claims de novo.

*State v. Villanueva-Gonzalez*, 180 Wn.2d 975, 979-80, 329 P.3d 78 (2014).  The

appropriate remedy for a double jeopardy violation is to vacate the offending convictions.

*State v. Knight*, 162 Wn.2d 806, 810, 174 P.3d 1167 (2008).

When a defendant has multiple convictions under the same statutory provision, the

courts apply the "unit of prosecution" test to analyze claims of double jeopardy.

*Villanueva-Gonzalez*, 180 Wn.2d at 980-81.  Under this test, the court must determine

---

[2] Neither party addresses whether Mr. Robinson raised this double jeopardy argument below, and the record is silent as to this issue.  To the extent Mr. Robinson raises this argument for the first time on appeal, this court and the Supreme Court have often held that a double jeopardy argument may be considered for the first time on appeal because the contention implicates a manifest error affecting a constitutional right.  *See e.g.*, *State v. Adel*, 136 Wn.2d 629, 631-32, 965 P.2d 1072 (1998); *State v. Allen*, 150 Wn. App. 300, 312, 207 P.3d 483 (2009).

whether the punishable act is each of the defendant's separate actions or the entire course of conduct. *State v. Adel*, 136 Wn.2d 629, 634, 965 P.2d 1072 (1998).

Assault is considered a course of conduct crime. *Villaneuva-Gonzalez*, 180 Wn.2d at 985. Accordingly, a defendant cannot be convicted for two separate assaults when the acts underlying those convictions are part of a single course of conduct. *In re Pers. Restraint of White*, 1 Wn. App. 2d 788, 797-98, 407 P.3d 1173 (2017).

To determine whether multiple assaultive acts constitute a single course of conduct, the court examines five factors: (1) the length of time during which the assaultive acts took place, (2) whether the assaultive acts occurred at the same location, (3) the defendant's intent or motivation for the different acts, (4) whether the acts were uninterrupted or whether there were intervening acts or events, and (5) whether there was an opportunity for the defendant to reconsider his actions. *Villanueva-Gonzalez*, 180 Wn.2d at 985.

The majority of these factors weigh in favor of finding a single course of conduct. The assaultive acts took place within approximately eight minutes and occurred at the same location. The intent or motivation for the acts appeared to be the same: Mr. Robinson was upset that Mr. Johnson apparently groped Ms. Geidl, and that Mr. Johnson was eating Mr. Robinson's food. The acts were also generally uninterrupted. There was potentially an opportunity for Mr. Robinson to reconsider his actions when the bystanders

6

initially attempted to intervene and again when he made the decision to get out of the hot tub and chase down Mr. Johnson. However, the totality of the circumstances support a finding that this was a single course of conduct.

The State agrees that, pursuant to this five-part test, at least some of the punches and kicks that formed the basis of the fourth degree assault conviction were part of the same course of conduct as the act of suffocation that formed the basis for the conviction of the second degree assault. We accept the State's concession and find that the fourth degree assault conviction violates the double jeopardy clause and, therefore, must be vacated.

Mr. Robinson also argues that the trial court violated his right to a unanimous verdict because insufficient evidence supported the deadly weapon alternative means. Specifically, he contends the empty beer bottles did not constitute a deadly weapon for purposes of RCW 9A.36.021.

An alternative means crime is one that presents multiple ways of committing and proving the same offense. *State v. Owens*, 180 Wn.2d 90, 96, 323 P.3d 1030 (2014). Assault in the second degree is an alternative means crime. *State v. Fuller*, 185 Wn.2d 30, 34, 367 P.3d 1057 (2016). When a criminal statute creates an alternative means crime, a defendant is entitled to an express unanimous jury determination as to which means forms the basis of the guilty verdict unless the State presents sufficient evidence to

support each of the alternative means. *Owens*, 180 Wn.2d at 95; *see also State v. Woodlyn*, 188 Wn.2d 157, 164, 392 P.3d 1062 (2017).

This court need not determine whether the deadly weapon alternative means was supported by sufficient evidence because the jury returned a special verdict form indicating it unanimously found that Mr. Robinson committed second degree assault by suffocation. Accordingly, Mr. Robinson received an express unanimous jury determination as to the means that formed the basis of the guilty verdict. His argument that the trial court violated his right to a unanimous verdict fails.

## CONCLUSION

We affirm Mr. Robinsons' conviction for second degree assault, but remand for the trial court to vacate the fourth degree assault conviction.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, C.J.

WE CONCUR:

Fearing, J.

Pennell, J.

8