# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | DIVISION ONE |
| Respondent, | No. 81079-1-I |
| v. | UNPUBLISHED OPINION |
| BENJAMIN CARL BLOOM, | |
| Appellant. | |

DWYER, J. — Benjamin Bloom appeals from the judgment entered on a jury's verdict finding him guilty of one count of assault in the first degree and two counts of assault in the second degree. Bloom contends that, by entering judgment on the jury's verdicts, the trial court deprived him of the right against double jeopardy. This is so, he asserts, because the count of assault in the first degree constituted the same offense as one of the counts of assault in the second degree. However, because the State proved each crime with different evidence, the two crimes were not the same in fact for double jeopardy purposes. Accordingly, we affirm.

Additionally, Bloom asserts that the trial court mistakenly ordered him to pay supervision fees as determined by the Department of Corrections. Because the record indicates that the trial court waived the requirement that he pay

supervision fees, we remand for the trial court to strike this requirement from the judgment.

I

Benjamin Bloom rented an apartment in Everett that his parents, Robert and Sally Richards, owned. On May 28, 2019, Bloom found a notice to vacate on the front door of the apartment. After finding the notice to vacate on the door, Bloom went to a home into which the Richards were moving.

Bloom entered this house with a handgun drawn and threw a board game that he had brought with him across the room. Bloom then put the handgun in Robert's face and told him to sit down and be quiet. Bloom struck Robert in the back of the head with the gun, knocking him face down onto the floor. Bloom then pushed Robert down and ordered him to stay down.

Bloom then approached Sally and pointed the handgun at her face. Bloom demanded that Sally tell him "the truth" about an identity theft conspiracy in which he believed Robert and Sally to be involved. Each time Robert or Sally could not answer one of his questions, Bloom pointed the gun at them and threatened them. During the questioning, Bloom repeatedly kicked Robert every time he tried to look up. Bloom also jammed the handgun in Sally's face, hit her with the gun, and smashed Sally's laptop computer on her head.

Approximately 30 minutes after Bloom started questioning and beating the couple, Sally decided to create a diversion. Sally used an oxygen concentrator to assist in breathing. She screamed that she needed more oxygen and implored Bloom to allow Robert to help her. Robert begged Bloom to let him

assist Sally with her oxygen tank. Bloom allowed Robert to get up from the floor so that Robert could assist Sally. Robert used this opportunity to run from the living room to the bedroom, which was located down a hallway. Inside the bedroom, a handgun was hidden underneath a pillow.

Bloom followed Robert to the bedroom. When Bloom reached the bedroom, Robert was on the bed, kneeling, shaking, and trying to remove the gun from its holster. Robert begged Bloom not to shoot him and Bloom responded by insulting Robert. Robert finally got the handgun out of the holster and shot at Bloom. Bloom ran away down the hallway, with Robert giving chase. Robert continued to shoot at Bloom, striking him twice. When Bloom reached the end of the hallway, he turned and fired once at Robert, striking Robert in the right leg. As Bloom fled out the back door, he and Robert exchanged more gunfire.

The State charged Bloom with one count of assault in the first degree, two counts of assault in the second degree, and one count of burglary in the first degree. The count for assault in the first degree (count one) alleged that Bloom,

> with intent to inflict great bodily harm, did assault another person, to-wit: Robert Richards, with a firearm and any deadly weapon and by any force or means likely to produce great bodily harm or death, to-wit: a firearm; proscribed by RCW 9A.36.011(1)(a), a felony.

Additionally, one of the counts for assault in the second degree (count two) alleged that Bloom,

> did intentionally assault another person, to-wit: Robert Richards, and thereby recklessly inflicted substantial bodily harm, and did intentionally assault another person, to-wit: Robert Richards, with a deadly weapon, to-wit: a firearm; proscribed by RCW 9A.36.021(1)(a) and (c), a felony.

3

The second count of assault in the second degree (count three) alleged that Bloom assaulted Sally Richards.

Following a jury trial, the jury found Bloom guilty of assault in the first degree and both counts of assault in the second degree. The jury found that Bloom was not guilty of burglary in the first degree. The trial court entered judgment on each guilty verdict, including those for assault in the first degree and assault in the second degree regarding Robert.

At sentencing, the trial court found that the assault in the first degree and the assault in the second degree regarding Robert constituted the same criminal conduct.[1] The trial court sentenced Bloom to 111 months of incarceration on count one and 14 months of incarceration on count three, to run concurrently. The trial court also imposed firearm enhancements on all three counts, amounting to 132 months of incarceration. In total, Bloom was sentenced to 243 months of incarceration.

The trial court additionally imposed 54 months of community custody. The judgment provided that Bloom was to pay supervision fees as determined by the Department of Corrections.

Bloom appeals.

---

[1] The trial court appears to have incorrectly ruled that the first and second degree assaults of Robert constituted the same criminal conduct. Pursuant to RCW 9.94A.589(1)(a), "'Same criminal conduct,' as used in this subsection, means two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim." As explained below, although the victim, time, and place for the two assault counts at issue were the same, the intent for each assault of Robert was different. However, as the State did not cross-appeal from this ruling, we impose no remedy.

II

Bloom contends that the trial court violated the double jeopardy clauses of the United States and Washington Constitutions by entering judgment on separate convictions for assault in the first degree (count one) and assault in the second degree with regard to Robert (count two). Accordingly, he avers, his conviction for assault in the second degree with regard to Robert should be vacated. Because the convictions for each of these assaults were based on separate acts, entering judgment on each did not violate the double jeopardy protection of either the federal or the state constitution.

"Claims of double jeopardy are questions of law, which we review de novo." State v. Hughes, 166 Wn.2d 675, 681, 212 P.3d 558 (2009). "The United States Constitution provides that a person may not be subject for the same offense to be twice put in jeopardy of life or limb." Hughes, 166 Wn.2d at 681 (citing U.S. CONST. amend. V). "Similarly, the Washington State Constitution provides that a person may not be twice put in jeopardy for the same offense." Hughes, 166 Wn.2d at 681 (citing WASH. CONST. art. I, § 9).

The protection against double jeopardy prevents a person from being (1) prosecuted for the same offense after acquittal, (2) prosecuted a second time for the same offense after conviction, or (3) subjected to multiple punishments for the same offense. State v. Fuller, 185 Wn.2d 30, 33-34, 367 P.3d 1057 (2016). The legislature determines what constitutes an "offense" for purposes of the double jeopardy clause. Sanabria v. United States, 437 U.S. 54, 69-70, 98 S. Ct. 2170, 57 L. Ed. 2d 43 (1978).

When a defendant is charged with violating the same statute more than once, there is no double jeopardy violation if each crime constitutes a separate unit of prosecution. State v.Graham, 153 Wn.2d 400, 404-05, 103 P.3d 1238 (2005). Our Supreme Court has determined that the unit of prosecution for assault is a course of assaultive conduct. State v. Villanueva-Gonzalez, 180 Wn.2d 975, 984-85, 329 P.3d 78 (2014). "[W]hen a statute defines a crime as a course of conduct over a period of time, 'then it is a continuous offense and any conviction or acquittal based on a portion of that course of action will bar prosecution on the remainder.'" State v. McReynolds, 117 Wn. App. 309, 339, 71 P.3d 663 (2003) (quoting Harrell v. Israel, 478 F. Supp. 752, 754-55 (E.D. Wis. 1979)).

To determine whether multiple assaultive acts constitute separate acts or a single course of conduct, we consider the totality of the circumstances in light of various factors, including: (1) the length of time over which the assaultive acts took place, (2) whether the assaultive acts took place in the same location, (3) the defendant's intent or motivation for the different assaultive acts, (4) whether the acts were uninterrupted or there were any intervening acts or events, and (5) whether there was an opportunity for the defendant to reconsider his or her actions. Villanueva-Gonzalez, 180 Wn.2d at 985.

Here, the acts forming the bases for the convictions of assault in the first degree and assault in the second degree with regard to Robert demonstrate that each conviction was based on separate acts. The initial assault occurred when Bloom struck Robert in the back of the head and kicked him numerous times

6

over approximately half an hour. The second assault occurred when Bloom shot Robert.

In applying the five-part inquiry required of us, we first note that the length of time between these assaults is not itself determinative of whether the assaults were separate acts. However, the fact that both assaults occurred inside the same house weighs slightly in favor of Bloom's claim that the assaults were part of the same course of conduct.

On the other hand, the remainder of the evidence demonstrates that the assaults were two separate acts. When Bloom entered the house, his initial motivation was to learn "the truth" and avoid eviction by intimidating his parents with violence and threats of death. However, when Robert began shooting at him, Bloom's motive changed from attempting to learn "the truth" to trying to get Robert to cease Robert's acts of self-defense. In addition, the diversion created by Robert and Sally interrupted the initial assault. Bloom found it necessary to follow Robert to the bedroom. This interrupted the flow of the initial assaultive conduct. This distraction also provided Bloom with the opportunity to reconsider his actions. When Robert dashed for the bedroom, Bloom plainly had the choice to simply leave the house. He chose not to. Thus, prior to shooting Robert in the leg, Bloom had time to decide whether to commit another assault or flee the scene.

Considering the totality of circumstances as applied to the mandated five-part test, the record establishes that the convictions for assault in the first degree and assault in the second degree were based on separate acts. Hence, the

7

entry of judgment on each conviction did not violate the double jeopardy clauses of either the state or federal constitution.

Bloom's assignment of error fails.

III

Bloom also contends that the trial court mistakenly ordered, as a condition of community custody, that he pay supervision fees as determined by the Department of Corrections.[2]  We agree.

RCW 9.94A.703(2) provides that "[u]nless waived by the court, as part of any term of community custody, the court shall order an offender to: . . .  (d) Pay supervision fees as determined by the department."  Because "the supervision fees are waivable by the trial court, they are discretionary [legal financial obligations]."  State v. Dillon, 12 Wn. App. 2d 133, 152, 456 P.3d 1199, review denied, 195 Wn.2d 1022 (2020).

At sentencing, the trial court found Bloom to be indigent, imposed the mandatory $500 victim assessment and $100 DNA fee, and "waiv[ed] all nonmandatory fines, fees, and assessments."  The trial court did not mention supervision fees.  However, the judgment and sentence signed by the judge required Bloom to "pay supervision fees as determined by [the Department of Corrections]."  Pursuant to Dillon, this requirement must be vacated on remand.

---

[2] The State contends that Bloom waived his right to appeal this issue by not objecting in the trial court.  Not so.  Our Supreme Court has explained that "[c]onditions of community custody may be challenged for the first time on appeal."  State v. Wallmuller, 194 Wn.2d 234, 238, 449 P.3d 619 (2019).  The requirement that an individual pay supervision fees as determined by the Department of Corrections is a condition of community custody.

The convictions are affirmed.  The cause is reversed and remanded to the trial court to eliminate the requirement of payment of supervision fees.

Dwyer, J.

WE CONCUR:

Coburn, J.          Bowman, J.