# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| THE STATE OF WASHINGTON, | No. 84617-5-I |
| Respondent, | |
| v. | DIVISION ONE |
| RONELLE WILLIAMS, | UNPUBLISHED OPINION |
| Appellant. | |

FELDMAN, J. — Williams appeals the trial court's judgment and sentence for assault in the second degree, felony harassment, unlawful possession of a firearm in the first degree, assault in the fourth degree, and witness tampering. He claims that the judgment and sentence violates double jeopardy principles, the trial court should have given him credit for time served on prior convictions, and the trial court improperly ordered him to pay Victim Penalty Assessment (VPA) and community custody supervision fees. We remand to the trial court to strike the VPA and community custody supervision fees, but in all other respects we affirm.

I

The State charged Williams with second-degree assault, unlawful possession of a firearm, fourth-degree assault, and tampering with a witness

following a violent altercation with his girlfriend at the time, Sametra Beck. A jury found him guilty on all charges.[1]

In his first appeal from the judgment and sentence, Williams argued that his arrest was not supported by probable cause, he was deprived of a fair trial, he received ineffective assistance of counsel, and his offender score was miscalculated. *State v. Williams*, 15 Wn. App. 2d 1030 (2020) (unpublished). After this court affirmed in an unpublished opinion, the Supreme Court granted discretionary review and remanded the case solely for recalculation of Williams' offender score and sentence in light of *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021), which struck down Washington's statute prohibiting simple drug possession. *State v. Williams*, 197 Wn.2d 1007, 484 P.3d 1260 (2021).

In accordance with the Supreme Court's mandate, the trial court entered an order amending Williams' sentence based on his recalculated offender score after excising the prior convictions subject to *Blake*. Williams again appeals.

## II

### A. Double Jeopardy

Williams asserts that the conviction for assault in the fourth degree must be vacated because it violates double jeopardy principles. In response, the State contends that Williams is prohibited from raising the double jeopardy issue in this appeal because he could have raised it, but did not raise it, in his first appeal from

---

[1] Because the facts of this case are known to the parties and set forth in detail in our prior opinion in this matter (*State v. Williams*, 15 Wn. App. 2d 1030 (2020) (unpublished), *review granted in part, cause remanded*, 197 Wn.2d 1007, 484 P.3d 1260 (2021)), we do not repeat them here except as relevant to the arguments below.

the trial court's judgment and sentence.  The fatal flaw in the State's argument is that the trial court addressed the merits of Williams' double jeopardy argument on resentencing, ruling that "it is of a constitutional magnitude, and I need to address it."  Consequently, our review is governed by RAP 2.5(c)(1), which states:

> *Prior Trial Court Action*. If a trial court decision is otherwise properly before the appellate court, the appellate court may at the instance of a party review and determine the propriety of a decision of the trial court even though a similar decision was not disputed in an earlier review of the same case.

Because the double jeopardy issue is of constitutional magnitude and the trial court squarely addressed it below, we exercise our discretion under RAP 2.5(c)(1) to review and determine the propriety of the trial court's decision.

While we agree with Williams that he can properly raise his double jeopardy argument in this appeal, we reject his argument on the merits.  As Williams notes, assault can be a course of conduct crime, and multiple assault convictions that constitute one course of conduct implicate double jeopardy concerns.  *State v. Villanueva-Gonzalez*, 180 Wn.2d 975, 984-85, 329 P.3d 78 (2014).  But the record here does not indicate that his assaultive acts were part of a single course of conduct.  To determine whether the acts constitute a single course of conduct, we examine five factors: (1) the length of time over which the acts took place, (2) whether the acts took place in the same location, (3) the defendant's intent or motivation for the different acts, (4) whether the acts were interrupted or there was an intervening act or event, and (5) whether there was an opportunity for the defendant to reconsider their actions.  *Id*. at 985.  These factors are not individually dispositive, and "the ultimate determination should depend on the totality of the

circumstances, not a mechanical balancing of the various factors." *Id*. We review the trial court's double jeopardy ruling de novo. *Id*. at 979-80.

Applying these factors, the trial court correctly concluded that Williams' fourth-degree assault conviction does not violate double jeopardy. As to factors (1) and (2), both assaultive acts took place in the same location, and the trial court estimated that both events occurred within a period of "around fifteen minutes of time thereabouts." Regarding factor (3), there were two separate assaultive acts, and the trial court reasonably found that Williams' intent was different for each. The fourth-degree assault was directed solely at Beck: Williams punched her several times in the face in rage, and the trial court found his intent in doing so was to assert domination and control over her. The second-degree assault, in contrast, was directed at both Beck and her unborn child: Williams pointed a loaded firearm at Beck's abdomen while threatening to kill her unborn child when she was eight months pregnant, and the trial court found his intent in doing so was "a different type of power and control by . . . lashing out at the child as well as Ms. Beck." As to factors (4) and (5), which are especially significant here, Williams left Beck's apartment between the two assaultive acts. During that time, Williams confronted Beck's ex-partner and armed himself with a firearm before returning to threaten Beck and her unborn child. Thus, there was at least one intervening event and sufficient opportunity for Williams to reconsider his actions. On this record, the trial court did not err in rejecting Williams' argument that the assaultive acts were part of a single course of conduct.

It is equally clear, considering the totality of the circumstances and the

4

*Villanueva-Gonzalez* factors, that Williams' reliance on *In re Pers. Restraint of White*, 1 Wn. App. 2d 788, 407 P.3d 1173 (2017), is misplaced. The defendant in *White* was convicted of two separate counts of second-degree assault for pointing a gun at his girlfriend (Raina Stevens) and strangling her. *Id*. at 794. The court found a double jeopardy violation in *White* because (1) "White's intent and motivation did not change" throughout the altercation with Stevens; (2) there was "one continuous struggle from the time White pointed a gun at Stevens to throwing her on the floor and beating her to the time he began to strangle her"; and (3) "the State points to no interruption or moment of calm that provided an opportunity to reconsider." *Id.* at 795-96. Because the facts and circumstances here are markedly different, as the above discussion shows, *White* is inapposite.[2]

## B.    Credit for time served

Williams next argues that he "is entitled to credit for time served for unconstitutional convictions." According to Williams, he "previously served 32 months' incarceration for multiple convictions" under the statute prohibiting simple drug possession that was declared unconstitutional in *Blake* and the trial court should have given him credit for the time he served on those unrelated convictions against the subsequent convictions at issue in this appeal. We disagree.

Preliminarily, Williams does not dispute the State's argument that the Sentencing Reform Act (SRA) does not authorize the relief he is seeking here.

---

[2] Williams' reliance on *State v. Robinson*, No. 36504-2-III, (Wash. Ct. App. Dec. 19, 2019) (unpublished), https://www.courts.wa.gov/opinions/pdf/365042_unp.pdf, is misplaced for similar reasons. Like *White* and unlike this case, *Robinson* involved an "uninterrupted" series of assaultive acts. *Id.* at 6.

Williams would be hard-pressed to argue otherwise, having conceded below that the SRA "does not provide for crediting time to one sentence for time served on another sentence." But even ignoring this concession, RCW 9.94A.505(6) authoritatively addresses this issue and requires trial courts to "give the offender credit for all confinement time served before the sentencing if that confinement was *solely* in regard to the offense for which the offender is being sentenced." (Emphasis added). The prior drug convictions here do not satisfy this requirement: they are not "solely in regard to the offense for which [Williams] is being sentenced," and are instead wholly unrelated to the convictions at issue in this appeal. Thus, the relief Williams seeks cannot properly be granted under the SRA.

Williams seeks to circumvent the plain language of the SRA by relying instead on principles of equity, fairness, and due process as described and applied by our Supreme Court in *In re Pers. Restraint of Roach*, 150 Wn.2d 29, 74 P.3d 134 (2003). The Court in *Roach* adopted "the doctrine of credit for time at liberty" and held, as a matter of fairness and equity, "that a convicted person is entitled to credit against his sentence for time spent erroneously at liberty due to the State's negligence, provided that the convicted person has not contributed to his release, has not absconded legal obligations while at liberty, and has had no further criminal convictions." *Id.* at 34-37.

Williams' reliance on *Roach* is misplaced, as this case does not raise any of the fairness and equity issues that animated the court's holding in *Roach*. Perhaps most important, unlike the circumstances in *Roach*, the government here did not lead Williams to believe that he had completed his sentence or parole and

6

was completely at liberty—which is the sine qua non of the doctrine of credit for time at liberty as described and applied in *Roach*. 150 Wn.2d at 35-36 (quoting *Green v. Christiansen*, 732 F.2d 1397, 1399 (9th Cir.1984)). Additionally, unlike the relief sought in *Roach*, the relief that Williams seeks contradicts the controlling statute. For these reasons, we decline to apply (or extend) the doctrine of credit for time at liberty to the facts at issue here.

## C. Legal Financial Obligations

Lastly, Williams argues that remand to the trial court is necessary to strike the $500 VPA and community custody supervision fees from his judgment and sentence. Williams contends that recent amendments to RCW 7.68.035 provide that the VPA shall not be imposed against a defendant who is indigent at the time of sentencing. LAWS OF 2023, ch. 449, § 1. The State does not dispute that Williams is indigent and does not object to a remand for purposes of striking the VPA from his judgment and sentence. The State similarly concedes that, pursuant to the amended RCW 9.94A.703 and *State v. Wemhoff*, 24 Wn. App. 2d 198, 519 P.3d 297 (2022), the trial court should have struck the community custody supervision fees from Williams' judgment and sentence. We accept the State's concessions and, accordingly, remand to the trial court to strike the VPA and community custody supervision fees.[3]

---

[3] While the State claims that Williams relies on inapposite authority, the court squarely held in *State v. Ellis*, 27 Wn. App. 2d 1, 16-17, 530 P.3d 1048 (2023), that the recent amendments to RCW 7.68.035 and RCW 9.94A.703 apply to cases, like this one, that are on direct appeal.

## III

We remand to the trial court to strike the VPA and community custody supervision fees.  In all other respects, we affirm.

_Feldman, J._

WE CONCUR:

_Bowman, J._      _Smith, C.J._