# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In the Matter of the Personal Restraint of: | No.  52627-1-II |
| AARON WALLACE TROTTER, | |
| Petitioner. | UNPUBLISHED OPINION |

LEE, C.J. — In this personal restraint petition (PRP), Aaron W. Trotter seeks to have his second degree assault with a firearm conviction vacated.  Trotter argues that (1) the trial court erred by transferring his CrR 7.8 motion to this court as a PRP, (2) his re-trial on second degree assault with a firearm (count II) after he was acquitted of second degree assault by strangulation (count I) in his first trial violated double jeopardy, (3) the jury's failure to reach a verdict on second degree assault with a firearm (count II) at the first trial was an implied acquittal barring re-prosecution of that charge,  and (4) the State was barred by collateral estoppel from trying Trotter again for assaulting Shantell Zimmerman after the jury acquitted him of assaulting Zimmerman at the first trial.

We hold that (1) the trial court did not err by transferring Trotter's CrR 7.8 motion to this court as a PRP, (2) double jeopardy was not violated when Trotter was re-tried on the second degree assault with a firearm charge after Trotter was acquitted of second degree assault by strangulation in the first trial, (3) the jury's failure to reach a verdict on second degree assault with a firearm (count II) at the first trial was not an implied acquittal barring re-prosecution of that

charge, and (4) the State was not barred by collateral estoppel from trying Trotter again for second degree assault with a firearm after the jury acquitted him of committing second degree assault by strangulation at the first trial. Accordingly, we deny Trotter's PRP.

## FACTS

On May 31, 2015, Shantell Zimmerman went to Trotter's house for a barbecue. Trotter punched Zimmerman several times, put his arm around Zimmerman's neck, and hit Zimmerman on the back and the head with the butt of a rifle.

On June 9, 2015, the State charged Trotter by information with two counts of assault. Count I was for second degree assault by strangulation,[1] domestic violence. Count II was for second degree assault with a firearm,[2] domestic violence with a firearm enhancement. Trotter was tried three times.

A. JURY TRIALS

1. First Trial

At the first trial, Zimmerman testified as follows. She began dating Trotter two years prior to trial. On May 31, 2015, Zimmerman went to Trotter's house for a barbecue. Trotter and Zimmerman drank alcohol from around 1 pm or 2 pm until dinner time. Zimmerman also smoked marijuana.

Zimmerman and Trotter were getting along until Trotter began calling her names. Zimmerman told him to stop, but Trotter did not. Then, while they were in the kitchen, Trotter

---

[1] RCW 9A.36.021(1)(g).

[2] RCW 9A.36.021(1)(c), RCW 9.94A.825, and RCW 9.94A.533(3).

2

started punching Zimmerman all over her body, including her face. When Trotter would not stop, Zimmerman ran into the bedroom, but Trotter followed her.

In the bedroom, Trotter started punching her again when she was on the bed. Zimmerman tried to get up, but Trotter grabbed her and put her in a chokehold. Zimmerman attempted to get her head out of the chokehold, and Trotter let go. Zimmerman fell down on the bed. Trotter then grabbed his AR-15 assault rifle from behind the door and bashed her in the back a couple of times and then once in the back of the head with the butt of the gun. Zimmerman ran to the bathroom, and Trotter did not follow her there. Zimmerman took a picture of all the blood in her hair and tried to clean herself up. Zimmerman then went to sleep in the bed, and Trotter left her alone.

Trotter testified that he and Zimmerman had dated for about a year and a half. Zimmerman was at Trotter's residence on May 31, 2015. Zimmerman arrived around 3 or 4 in the afternoon. Both Zimmerman and Trotter consumed alcohol and smoked marijuana, and Zimmerman became intoxicated.

After Zimmerman became intoxicated, Trotter asked her to leave, and she refused. Zimmerman finally walked out the door, and Trotter locked it behind her. Trotter testified that "[Zimmerman] turned around and jimmied my door lock open. And as soon as I seen that, I ran to my bedroom, I closed my door and I locked my door to separate us. I didn't want the incident to happen." Verified Report of Proceedings (VRP) (Aug. 14, 2015) at 151. Zimmerman rammed down the bedroom door with her body. After Zimmerman broke down the door, Trotter grabbed his shotgun from behind the door and defended himself. Trotter had an AR-15 that was also behind the door, but he never picked it up. After Zimmerman pushed down the door, Trotter tried to push her out, but that did not work. Then Trotter used his shotgun and tried to push her out with the

butt stock. Zimmerman's back was towards Trotter because she had used her back to push down the door. The butt of the shotgun hit Zimmerman's back. Trotter did not strike Zimmerman's head. Zimmerman charged toward him. Trotter put his arm around Zimmerman's neck and tried to tow her out of the house. Trotter testified:

> She swats the shotgun out of my hands and hits the ground and at that point I pull her around straight and I push her, trying to get her out of my house, and she runs straight into a wall and then she hits the ground, and I obtained my shotgun and then I yell for my brother.

VRP (Aug. 14, 2015) at 158-59. Trotter told Zimmerman to leave, but she refused. Zimmerman went to the bathroom, took a picture, and then passed out in Trotter's bed. Trotter put his guns in the safe and went to sleep. Zimmerman left the next morning.

At the close of evidence, the trial court gave the jury its instructions, stating, in relevant part:

### INSTRUCTION NO. 5

> A separate crime is charged in each count. You must decide each count separately. Your verdict on one count should not control your verdict on the other count.

Clerk's Papers (CP) at 17 (boldface omitted).

### INSTRUCTION NO. 6

> A person commits the crime of assault in the second degree when he assaults another with a deadly weapon or assaults another by strangulation.

CP at 18 (boldface omitted).

### INSTRUCTION NO. 9

> To convict the defendant of the crime of assault in the second degree as charged in count I, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about May 31, 2015, the defendant assaulted Shantell Zimmerman by strangulation; and

(2) That this act occurred in the State of Washington.

CP at 21 (boldface omitted).

INSTRUCTION NO. 10

"Strangulation" means to compress a person's neck, thereby obstructing the person's blood flow or ability to breathe, or doing so with the intent to obstruct the person's blood flow or ability to breathe.

CP at 22 (boldface omitted).

INSTRUCTION NO. 11

It is a defense to a charge of Assault that the force used was lawful as defined in this instruction.

The use of force upon or toward the person of another is lawful when used by a person who reasonably believes that he is about to be injured in preventing or attempting to prevent an offense against the person, and when the force is not more than is necessary.

The use of force upon or toward the person of another is lawful when used in preventing or attempting to prevent a malicious trespass or other malicious interference with real or personal property lawfully in that person's possession, and when the force is not more than necessary.

The person using the force may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they appeared to the person, taking into consideration all of the facts and circumstances known to the person at the time of and prior to the incident.

The State has the burden of proving beyond a reasonable doubt that the force used by the defendant was not lawful. If you find that the State has not proved the absence of this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty as to this charge.

CP at 23 (boldface omitted).

INSTRUCTION NO. 15

To convict the defendant of the crime of assault in the second degree as charged in count II, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about May 31, 2015, the defendant assaulted Shantell Zimmerman with a deadly weapon; and

(2) That this act occurred in the State of Washington.

CP at 27 (boldface omitted).

INSTRUCTION NO. 16

A firearm, whether loaded or unloaded, is a deadly weapon.

CP at 28 (boldface omitted).

During deliberations, the jury informed the trial court that they had a verdict for count I, but they were hung as to count II. The trial court stated to the jury:

I've called you back into the courtroom to find out whether you have a reasonable probability of reaching a verdict. First, a word of caution. Because you are in the process of deliberating, it is essential that you give no indication about how the deliberations are going. You must not make any remark here in the courtroom that may adversely affect the rights of either party or may in any way disclose your opinion of this case or the opinions of other members of the jury.

. . . .

. . . I'm going to ask your presiding juror if there's a reasonable probability of the jury reaching a verdict within a reasonable time. The presiding juror must restrict his answer to yes or no when I ask this question and must not say anything else.

. . . .

. . . So what I'm going to ask just focusing on Count II. Is there a reasonable probability of the jury reaching a verdict within a reasonable time as to Count II?

VRP (Aug. 14, 2015) at 300-01. The presiding juror answered, "No." VRP (Aug. 14, 2015) at 301.

The jury returned verdicts, finding Trotter not guilty of second degree assault by strangulation (count I) and leaving the verdict form blank for second degree assault with a firearm (count II). The trial court declared a mistrial as to second degree assault with a firearm (count II).

### 2. Second Trial

Trotter was retried on the charge of second degree assault with a firearm. Trotter's second trial ended in a mistrial after a lay witness gave expert testimony.

### 3. Third Trial

Trotter was tried a third time on the charge of second degree assault with a firearm. At this third trial, Zimmerman testified that on May 31, 2015, both she and Trotter were drinking vodka and using marijuana. Trotter started calling her names. Then Trotter hit her in the face and told her to leave. Zimmerman drove down to the river behind his house. Trotter, intoxicated, followed Zimmerman down to the river with his gun strapped to him. Zimmerman and Trotter went back to Trotter's house. At the house, Trotter began punching Zimmerman when they were in the kitchen. This occurred for a few minutes. Zimmerman ran into the bedroom and onto the bed to try to get away from Trotter, but he followed her and kept hitting her. Zimmerman tried to get off the bed, but Trotter grabbed her in a chokehold with his arm. When Trotter let go, Zimmerman fell back onto the bed. Trotter turned around, grabbed his AR-15 from behind the door, and began hitting her in the back and the back of her head with the butt of the gun. Trotter then stopped hitting her and left the room.

Trotter testified that Zimmerman was at his residence for a barbecue on May 31, 2015. Trotter and Zimmerman both consumed vodka that Zimmerman had brought. Zimmerman became intoxicated about one or two hours after she arrived. Trotter left his home to bring a newspaper clipping to his grandmother's home, which was about 200 yards away. Zimmerman was not upset. When Trotter returned, Zimmerman was gone. Trotter went for a walk in the woods behind his house. There, Trotter encountered Zimmerman, who was crying and hyper. Trotter had one of his two AR-15s with him in the woods. He normally carried his rifle in the woods because there are cougars and bears. When Zimmerman saw Trotter she wanted to go back to the house and started walking back to her car. Zimmerman went to her vehicle and drove away. Trotter walked back to his house.

When Trotter arrived at his house, Zimmerman's vehicle was there, and Zimmerman was inside taking shots of vodka. Trotter put his rifle in his bedroom and had a few shots with her. Zimmerman was upset that Trotter had gone to his grandmother's house. Trotter asked her to leave multiple times. Then Trotter started the barbecue and ate his meal. Zimmerman was still nagging him and picking on him. Trotter asked her to leave again.

Zimmerman left, and Trotter locked the door. Zimmerman broke in and entered the house again. Trotter went into his bedroom and locked the door. Zimmerman began pounding on the bedroom door and screaming at Trotter. Trotter was afraid that Zimmerman would burst through the door, grab a gun, and kill him. Zimmerman did break the door. Trotter grabbed his shotgun from behind the door and tried to defend himself. Trotter struck Zimmerman in the back with his shotgun in an attempt to get her out of the bedroom. Trotter then put his arm around Zimmerman and tried to tow her outside, but she kept fighting with him. Trotter was able to get Zimmerman

8

outside the bedroom and into the hallway. Zimmerman swatted the shotgun out of Trotter's hand while he had his arm around her. Trotter was able to get ahold of the shotgun again. Trotter pushed Zimmerman, and she hit the wall and fell to the ground crying. Trotter then tried to get Zimmerman out again but was not successful. When Zimmerman stopped fighting, Trotter put his guns in his gun safe. After that, Zimmerman went to sleep in Trotter's bed.

At the close of evidence, the trial court gave the jury its instructions, stating, in relevant part:

INSTRUCTION NO. 8

A firearm, whether loaded or unloaded, is a deadly weapon.

CP at 49 (boldface omitted).

INSTRUCTION NO. 10

To convict the defendant of the crime of assault in the second degree as charged, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about May 31, 2015, the defendant assaulted Shantell Zimmerman with a deadly weapon; and

(2) That this act occurred in the State of Washington.

CP at 51 (boldface omitted).

The jury found Trotter guilty of second degree assault with a firearm. The jury found that Trotter and Zimmerman were members of the same family or household and that Trotter was armed with a firearm at the time of the commission of the crime. Trotter was sentenced to 39 months of confinement.

Division I of this court affirmed Trotter's conviction.[3]  The case was mandated on January 26, 2018.[4]

On July 11, 2018, Trotter filed a Petition for Writ of Habeas Corpus, arguing that he was unlawfully restrained because he was "put TWICE in jeopardy for the same offense in which petitioner was found NOT GUILTY by a jury of his peers."  CP at 77 (boldface omitted).  On the same day, Trotter filed a Motion to Vacate Judgment and Sentence Pursuant to CrR 7.8(b)(3)(4)(5) and RAP 7.2(e), also arguing that his constitutional rights were violated when he was put twice in jeopardy for the same offense.

On July 23, the trial court transferred to this court Trotter's CrR 7.8 motion as a personal restraint petition, stating that "the Defendant has not made a substantial showing that he is entitled to relief or that resolution of the motion will require a factual hearing."  CP at 86.

On December 7, 2018, Trotter filed a Motion to Object Superior Transfer of Petitioners Motion for CrR 7.8(b)(3)(4)(5) R.A.P. 7.2(e).  Trotter argued that the trial court erred by transferring his CrR 7.8(b) motion to vacate his judgment and sentence to this court as a PRP. Trotter also argued that the trial court erred by refusing to answer his motion for habeas corpus and by transferring the motion for habeas corpus to this court.  On December 11, 2018, this court responded in a letter that any objection to the transfer of the habeas corpus petition or CrR 7.8 motion would be considered upon review of the petition.

---

[3]  *State v. Trotter*, No. 76732-1-1 (Wash. Ct. App. July 31, 2017) http://www.courts.wa.gov/opinions/index.cfm?fa=opinions.showOpinion&filename=767321MAJ

[4]  *Mandate*, No. 76732-1-1 (January 26, 2018).

ANALYSIS

A.   STANDARDS FOR RELIEF IN A PRP

"Relief by way of collateral challenge to a conviction is extraordinary, and the petitioner must meet a high standard before this court will disturb an otherwise settled judgment." *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 132, 267 P.3d 324 (2011).  To be entitled to relief in a PRP, the petitioner must show either (1) a constitutional error resulting in actual and substantial prejudice, or (2) a fundamental defect of a nonconstitutional nature that inherently resulted in a complete miscarriage of justice.  *In re Pers. Restraint of Finstad*, 177 Wn.2d 501, 506, 301 P.3d 450 (2013).

Whether based on a constitutional or nonconstitutional error, a petitioner must state with particularity the factual allegations that underlie his claim of unlawful restraint.  *In re Pers. Restraint of Schreiber*, 189 Wn. App. 110, 113, 357 P.3d 668 (2015).  Bare assertions and conclusory allegations are insufficient to warrant relief.  *Id*.  And the petitioner's allegations must have evidentiary support.  *Id*.  "If the petitioner's evidence is based on knowledge in the possession of others, he may not simply state what he thinks those others would say, but must present their affidavits or other corroborative evidence."  *In re Pers. Restraint of Monschke*, 160 Wn. App. 479, 488-89, 251 P.3d 884 (2010).

A PRP will be denied if the petitioner fails to make a prima facie showing of either actual and substantial prejudice from a constitutional error or a fundamental defect from a nonconstitutional error.  *Schreiber*, 189 Wn. App. at 113.  A PRP will be granted if this court is convinced that the petitioner has proven actual and substantial prejudice resulting from a constitutional error or a fundamental defect resulting from a nonconstitutional error.  *Id*.

B.    TRANSFER AS PRP

Trotter argues that the trial court erred by transferring his CrR 7.8(b) motion to vacate his judgment and sentence to this court as a PRP. Specifically, Trotter asserts that the trial court did not "meaningfully engage[] in the transfer analysis" and made no determination regarding a substantial showing for relief. Mot. to Object Superior Transfer of Pet'r's Mot. for CrR 7.8(b)(3)(4)(5) R.A.P. 7.2(e) (Dec. 7, 2018) at 2.

We review a trial court's ruling on a CrR 7.8 motion for abuse of discretion. *State v. Zavala-Reynoso*, 127 Wn. App. 119, 122, 110 P.3d 827 (2005). Under this standard, the trial court's decision will not be reversed unless it was manifestly unreasonable or based on untenable grounds or reasons. *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995).

Under CrR 7.8(c)(2), the trial court must transfer a motion to vacate judgment to this court unless it determines that the motion is timely filed and "either (i) the defendant has made a substantial showing that he or she is entitled to relief or (ii) resolution of the motion will require a factual hearing." In other words, only if the motion is timely and appears to have merit or requires fact finding should the trial court retain the motion and hear it; in all other cases, the motion is transferred to this court. *State v. Smith*, 144 Wn. App. 860, 863, 184 P.3d 666 (2008). The trial court must show that it meaningfully engaged in a CrR 7.8(c)(2) transfer analysis. *In re Pers. Restraint of Ruiz-Sanabria*, 184 Wn.2d 632, 638, 362, P.3d 758 (2018). A preprinted transfer order with check boxes corresponding to CrR 7.8(c)(2) criteria may serve this purpose. *Id.* at 638, n.3.

Under RCW 10.73.090(1), "No petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed more than one year after the judgment becomes final if

the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction." A judgment becomes final on the date that an appellate court issues its mandate disposing of a timely direct appeal from conviction. RCW 10.73.090(3)(b). A collateral attack means any form of post-conviction relief, other than a direct appeal, including a motion to vacate judgment. RCW 10.73.090(2).

Here, Division I of this court issued a mandate disposing of the direct appeal on January 26, 2018. Trotter filed the CrR 7.8(b) motion to vacate judgment and sentence, or collateral attack, on July 11, 2018. Because Trotter filed the petition for collateral attack within one year after the judgment became final, Trotter's CrR 7.8(b) motion was timely.

Contrary to Trotter's assertion, the trial court found that Trotter had not made a substantial showing that he is entitled to relief or that resolution of the motion will require a factual hearing. Further, the trial court entered an order with its stated reasons for transferring Trotter's CrR 7.8(b) motion to this court, showing that it meaningfully engaged in a CrR 7.8(c)(2) transfer analysis. *See Ruiz-Sanabria*, 184 Wn.2d at 638. Thus, the trial court transferred Trotter's CrR 7.8(b) motion to this court after meaningfully engaging in a CrR 7.8(c)(2) transfer analysis, and its decision to transfer the CrR 7.8 motion to this court as a PRP was not manifestly unreasonable or based on untenable grounds or reasons. *See Powell*, 126 Wn.2d at 258. Therefore, the trial court did not abuse its discretion in transferring Trotter's motion to this court to be considered as a PRP.[5]

---

[5] Trotter also argues that the trial court erred by refusing to answer his motion for habeas corpus and by transferring the motion for habeas corpus to this court. But the record does not show that the trial court transferred Trotter's motion for habeas corpus to this court. Therefore, we do not address this issue. *See* RAP 2.2 (listing the decisions of the superior court that may be appealed).

C.    DOUBLE JEOPARDY

Trotter argues that "[p]rosecuting and convicting Trotter of second degree assault after a jury already acquitted him of the crime violated the Double Jeopardy Clause." Supp. Br. of Pet. at 8 (boldface omitted). Specifically, Trotter contends that "[b]ecause assault is a course of conduct crime, Trotter's acquittal at the first trial precluded the State from re-prosecuting him for any other portion of the same assault." Supp. Br. of Pet. At 14. We disagree.

Both the federal and state double jeopardy clauses protect against multiple punishments for the same offense. U.S. CONST. amend. V; WASH. CONST. art. I, § 9; *State v. Hart*, 188 Wn. App. 453, 457, 353 P.3d 253 (2015). "The prohibition on double jeopardy generally means that a person cannot be prosecuted for the same offense after being acquitted, be prosecuted for the same offense after being convicted, or receive multiple punishments for the same offense." *State v. Villanueva-Gonzalez*, 180 Wn.2d 975, 980, 329 P.3d 78 (2014). "The prohibition against double jeopardy applies when (1) jeopardy previously attached, (2) jeopardy was terminated, and (3) the defendant is again prosecuted for the same offense." *State v. George*, 160 Wn.2d 727, 741, 158 P.3d 1169 (2007). We review alleged violations of double jeopardy de novo. *Villanueva-Gonzalez*, 180 Wn.2d at 979-80.

The second degree assault statute, RCW 9A.36.021, articulates a single criminal offense and currently provides seven separate subsections defining how the offense may be committed. *State v. Fuller*, 185 Wn.2d 30, 34, 367 P.3d 1057 (2016); *see also* RCW 9A.36.021(a)-(g). The relevant subsections here are RCW 9A.36.021(c) (assaults another with a deadly weapon) and RCW 9A.36.021(g) (assaults another by strangulation or suffocation).

14

Assault is a course of conduct crime, which "helps to avoid the risk of a defendant being 'convicted for every punch thrown in a fistfight.'" *Villanueva-Gonzalez*, 180 Wn.2d at 985 (quoting *State v. Tili*, 139 Wn.2d 107, 116, 985 P.2d 365 (1999)). Thus, if multiple assaultive acts constitute only one course of conduct, then double jeopardy protects against multiple convictions. *Id.* at 980-81.

While assault is a course of conduct crime, "'[t]he precise manner in which an indictment is drawn cannot be ignored, because an important function of the indictment is to ensure that in case any other proceedings are taken against [the defendant] for a similar offen[s]e, . . . the record [will] sho[w] with accuracy to what extent he may plead a former acquittal or conviction.'" *Fuller*, 185 Wn.2d at 35 (internal quotation marks omitted) (quoting *Sanabria v. United States*, 437 U.S. 54, 65-66, 98 S. Ct. 2170, 57 L. Ed. 2d 43 (1978)). Further, "'[a] defendant charged and tried under multiple statutory alternatives experiences the same jeopardy as one charged and tried on a single theory.'" *Fuller*, 185 Wn.2d at 35 (quoting *State v. Wright*, 165 Wn.2d 783, 801, 203 P.3d 1027 (2009).

In *Fuller*, the defendant was charged with second degree assault based on the use of a deadly weapon (Count I) and second degree assault based on "'recklessly inflict[ing] substantial bodily harm'" (Count II). 185 Wn.2d at 32 (quoting record). Both assault charges arose from the same act, in which Fuller allegedly struck the victim with a baseball bat. *Id.* The trial court instructed the jury that a separate crime was charged in each count, and that its verdict on one count did not control the verdict on any other count. *Id.* at 32-33. The jury was given an alternative means instruction for assault and separate instructions for counts I and II, which specifically listed the elements the State had to prove to convict on each of those counts. *Id.* at 33.

15

The jury found Fuller not guilty of second degree assault by recklessly inflicting substantial bodily harm (Count II) but was unable to reach a verdict as to second degree assault by using a deadly weapon (Count I). *Id*. The trial court declared a mistrial as to count I, and the State sought to retry Fuller. *Id*. Fuller moved to dismiss, arguing that re-prosecution of assault on any theory violated his right to be free from double jeopardy. *Id*. The court held that jeopardy never terminated as to the count on which the jury deadlocked, even though it terminated with respect to the count on which the jury acquitted Fuller. *Id.* at 37. The court stated:

> It is important to recognize that Fuller could not have reasonably relied on the jury's acquittal as terminating jeopardy for second degree assault because it took place at the same time the jury deadlocked on the same offense. All of the charges were brought in one trial, before one jury. In one proceeding, the jury simultaneously acquitted Fuller on one means of committing an offense and was hung on the other means. Fuller stands in the same position as a defendant who is simultaneously acquitted and convicted of the same offense under two subsections of a statute. He cannot reasonably rely on an acquittal on one means as being sufficient to terminate jeopardy for the overall offense when the jury simultaneously deadlocked on the other means.

*Id.* at 38-39.

Here, the facts are nearly identical to those in *Fuller*. The State charged Trotter with two counts of second degree assault, alleging a separate means by which each count was committed: one by strangulation and one with a firearm. Like in *Fuller*, during Trotter's first trial, the trial court instructed the jury that a separate crime is charged in each count and that it must decide each count separately. In addition to an instruction that stated that the jury's verdict on one count should not control its verdict on the other count, the jury was instructed that a person commits the crime of assault in the second degree when he assaults another with a deadly weapon or assaults another by strangulation. The trial court also gave separate "to convict" instructions for counts I and II,

which specifically listed the elements the State had to prove for the jury to convict on each of those counts.

Further, like in *Fuller*, all the charges were brought in one trial before one jury. In the first trial, the jury simultaneously acquitted Trotter on one means of committing second degree assault by strangulation, and was hung on the other means of second degree assault with a firearm. Thus, Trotter cannot reasonably rely on an acquittal on the second degree assault by strangulation (count 1) charge as being sufficient to terminate jeopardy for the overall offense when the jury simultaneously deadlocked on the second degree assault with a firearm (count II) charge.

Trotter relies on *Villanueva-Gonzalez* to argue that a single continuous assault occurred. But even assuming without deciding that the assault here was a continuing course of conduct, *Villanueva-Gonzalez* is distinguishable.

In *Villanueva-Gonzalez*, the defendant, Villanueva-Gonzalez, pulled his girlfriend out of the room, hit her head with his forehead and then grabbed her by the neck and held her against some furniture. 180 Wn.2d at 978. The State charged Villanueva-Gonzalez with two counts of second degree assault: one by strangulation and one for inflicting substantial bodily harm based on the head butt. *Id.* at 979. The jury convicted him of the lesser included charge of fourth degree assault for the strangulation and for second degree assault for the head butt. *Id.* On appeal, the court applied a totality of the circumstances test and held that Villanueva-Gonzalez's actions constituted a single course of conduct. *Id.* at 985-86. Thus, the two assault convictions violated double jeopardy because Villanueva-Gonzalez received multiple punishments for the same offense. *Id.* at 980, 986.

*Villanueva-Gonzalez* is distinguishable from *Fuller* because Villanueva-Gonzalez was convicted twice for the same assault and thus received multiple punishments for the same crime, subjecting him to double jeopardy. *Id.* at 980. *Fuller*, on the other hand, involved a defendant who was acquitted of one means of the assault (recklessly inflicting substantial bodily harm), and the jury was hung as to the other means of assault (use of a deadly weapon). *Fuller*, 185 Wn.2d at 32-33. Because the jury was hung as to assault with a deadly weapon, jeopardy never terminated as to that charge before Fuller was re-tried. *Id.* at 37.

Also, this case is distinguishable from *Villanueva-Gonzalez*. As noted above, Villanueva-Gonzalez was convicted twice for the same assault and received multiple punishments for the same offense. Trotter, on the other hand, did not receive multiple punishments for the same offense because he was only convicted of one crime arising from the assault. At the first trial, the jury found Trotter not guilty of committing an assault by strangulation but the jury was unable to reach a verdict on whether he was guilty of committing an assault with a firearm. Therefore, Trotter was not prosecuted after acquittal on the second degree assault with a firearm charge, nor was he first convicted of second degree assault with a firearm and then prosecuted again for the same offense. *See Villanueva-Gonzalez*, 180 Wn.2d at 980. Rather, after the jury failed to reach a decision on the assault with a firearm charge during the first trial, and Trotter was re-tried for that crime.

Under the facts of this case, we follow *Fuller* and not *Villanueva-Gonzalez*. Following *Fuller*, we hold that jeopardy was never terminated as to the second degree assault with a firearm charge, and Trotter's double jeopardy claim fails.

D.     IMPLIED ACQUITTAL

Trotter argues that the jury's failure to reach a verdict on the second degree assault with a firearm charge at the first trial amounts to an implied acquittal barring re-prosecution on that charge.  Trotter contends that the jury's failure to agree on a verdict was an implied acquittal because it left the verdict form blank and the failure to agree was not formally entered on the record.  Trotter further argues that the jury's failure to agree was brought to light by the trial court's inappropriate inquiry into the jury's thought processes.  We disagree.

"'[T]he protection of the Double Jeopardy Clause by its terms applies only if there has been some event, such as an acquittal, which terminates the original jeopardy.'"  *State v. Daniels*, 160 Wn.2d 256, 262, 156, P.3d 905 (2007) (quoting *Richardson v. United States*, 468 U.S. 317, 325, 104 S. Ct. 3081, 82 L. Ed. 2d 242 (1984)).  Jury silence can be construed as an acquittal and, therefore, act to terminate jeopardy.  *Id*. But "'where a jury has not been silent as to a particular count, but where, on the contrary, a disagreement is formally entered on the record,' the implied acquittal doctrine does not apply."  *State v. Ervin*, 158 Wn.2d 746, 757, 147 P.3d 567 (2006) (quoting *Selvester v. United States*, 170 U.S. 262, 269, 18 S. Ct. 580, 42 L. Ed. 1029 (1898)).

In entering a formal disagreement on the record, neither the parties nor judges may inquire into the internal processes through which the jury reaches its verdict.  *State v. Linton*, 156 Wn.2d 777, 787, 132 P.3d 127 (2006).

> "The mental processes by which individual jurors reached their respective conclusions, their motives in arriving at their verdicts, the effect the evidence may have had upon the jurors or the weight particular jurors may have given to particular evidence, or the jurors' intentions and beliefs, are all factors inhering in the jury's processes in arriving at its verdict, and, therefore, inhere in the verdict itself."

*Linton*, 156 Wn.2d at 787 (quoting *Cox v. Charles Wright Acad., Inc.*, 70 Wn.2d 173, 179-80, 422 P.2d 515 (1967)). Considerations that inhere in the jury's verdict may not be considered by the court or the parties. *State v. Marks*, 90 Wn. App. 980, 986, 955 P.2d 406, *review denied*, 136 Wn.2d 1024 (1998). "The trial judge's inquiry into the verdict is limited to polling members of the jury to ensure that the verdict read is the actual verdict of each individual." *Linton*, 156 Wn.2d at 788. The decision of the jury is contained exclusively in the verdict. *State v. Ng*, 110 Wn.2d 32, 43, 750 P.2d 632 (1988).

Trotter relies on *Linton* to argue that a disagreement was not formally entered on the record because the trial court's inquiry on the second degree assault with a firearm charge improperly inquired into "the jury's thinking about that count." Supp. Br. of Pet. at 24. In *Linton*, the defendant, Linton, was charged with first degree assault. 156 Wn.2d at 779. The jury was instructed that "if they found Linton not guilty of first degree assault or, if after full and careful consideration they were not able to agree on disposition of that crime, then the jury should consider the lesser included crime of second degree assault." *Id.* at 780. The jury was deadlocked as to first degree assault, but found Linton guilty of second degree assault. *Id.* at 780-81. The jury left the verdict form for the first degree assault charge blank. *Id*. The trial judge asked the presiding juror whether the jury would be able to arrive at a unanimous verdict on first degree assault if given more time. *Id.* at 781. After the presiding juror stated that he believed the jury would not reach a unanimous verdict, the trial judge entered a finding that the jury was hopelessly deadlocked on first degree assault and declared a mistrial as to that charge. *Id.* at 781-82. The Supreme Court held that based on the instructions and verdict forms, the jury's "disposal" of first degree assault

is "one of those elements that inheres in its verdict on second degree assault." *Id.* at 788. The court stated:

> The jury's resolution on first degree assault is therefore beyond the realm of inquiry. Where an unable to agree instruction is used which allows the jury to move on to a lesser included offense when it acquits or is unable to agree on the greater charge, and the jury does move on without entering a verdict, the jury will necessarily remain "silent" on the greater offense. Had the trial court limited its inquiry into whether each juror agreed with the verdict as it was stated, the jury would have remained "silent" on first degree assault. Under the implied acquittal doctrine then, the judge would have had to conclude that the jury implicitly acquitted Linton of first degree assault.

*Id.* at 788-89.

Here, during deliberations, the jury informed the trial court that it had a verdict for second degree assault by strangulation (count I) but was hung as to second degree assault with a firearm (count II). The trial court asked the presiding juror whether there was a reasonable probability of the jury reaching a verdict within a reasonable time as to second degree assault with a firearm (count II), and the presiding juror answered in the negative. The jury found Trotter not guilty as to count I and left the verdict form for count II blank. Thus, unlike in *Linton*, the jury did not necessarily remain silent on count II to reach a verdict on count I.

Also, the second degree assault with a firearm charge (count II) was not a lesser included charge of the second degree assault by strangulation (count I). And the jury was instructed that it must decide each count separately and that its verdict on one count should not control its verdict on the other count. Thus, the presiding juror's response to the trial court's inquiry as to the reasonable probability of the jury reaching a verdict on second degree assault with a firearm (count II) within a reasonable time did not inhere in its verdict on second degree assault by strangulation; the trial court's inquiry was not improper.

While the jury did leave the verdict form blank for the second degree assault with a firearm (count II) count, their inability to reach a verdict on that count was formally entered on the record when the presiding juror stated the jury could not reach agreement and the trial court entered a mistrial based on the presiding juror's statement that there was no reasonable probability of the jury reaching a verdict within a reasonable time. The implied acquittal doctrine does not apply.

E.    COLLATERAL ESTOPPEL

Trotter argues that the "State was barred by the doctrine of collateral estoppel from prosecuting Trotter again for second degree assault after the jury acquitted him of committing the same assault at the first trial." Supp. Br. of Pet. at 25 (boldface omitted). We disagree.

"Under the collateral estoppel doctrine, 'when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" *In re Pers. Restraint of Moi*, 184 Wn.2d 575, 579, 360 P.3d 811 (2015) (quoting *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970)), *cert. denied*, 137 S. Ct. 566 (2016). The doctrine of collateral estoppel is incorporated within the double jeopardy clause of the Fifth Amendment to the United States Constitution. *Id.* at 579. As the party asserting collateral estoppel, Trotter bears the burden of proof. *See id.*

A party asserting collateral estoppel bears the burden of proving that "(1) the issue decided in the prior adjudication is identical to the one presented in the second proceeding, (2) the prior adjudication ended in a final judgment on the merits, (3) the party against whom the doctrine is asserted was a party or in privity with the party to the prior adjudication, and (4) application of the doctrine does not work an injustice." *State v. Longo*, 185 Wn. App. 804, 808, 343 P.3d 378 (2015). We review de novo whether collateral estoppel applies to bar relitigation of an issue. *Id.*

22

To convict Trotter of the crime of second degree assault by strangulation as charged in count I, the jury had to find the following elements beyond a reasonable doubt: (1) that on or about May 31, 2015, the defendant assaulted Shantell Zimmerman by strangulation; and (2) that this act occurred in the State of Washington. Strangulation means to compress a person's neck, thereby obstructing the person's blood flow or ability to breathe, or doing so with the intent to obstruct the person's blood flow or ability to breathe. In contrast, to convict Trotter of the crime of second degree assault as charged in court II, the jury had to find the following elements beyond a reasonable doubt: (1) that on or about May 31, 2015, the defendant assaulted Shantell Zimmerman with a deadly weapon; and (2) that this act occurred in the State of Washington. A firearm, whether loaded or unloaded, is a deadly weapon. The trial court provided a self-defense instruction for the charge of assault.

Here, the jury at Trotter's first trial could have acquitted him of second degree assault by strangulation based on a determination that the State failed to prove beyond a reasonable doubt that Trotter compressed Zimmerman's neck and obstructed or intended to obstruct her blood flow or ability to breathe. At the third trial, the jury could have found that Trotter assaulted Zimmerman with a deadly weapon without considering strangulation. Because the jury at Trotter's first trial grounded its verdict of acquittal on the State's failure to prove assault by strangulation, Trotter cannot meet his burden to show that collateral estoppel barred a subsequent jury finding him guilty of second degree assault with a firearm. Thus, the issue that was decided in the first trial was not identical to the issue decided in the third trial. Therefore, Trotter's collateral estoppel claim fails.

No. 52627-1-II

We deny Trotter's PRP.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, C.J.
Lee, C.J.

We concur:

_____
Maxa, J.

_____
Glasgow, J.